UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF IOWA
WESTERN DIVISION

IN RE:

DEBORAH BARBEE                                    Chapter 13

    Debtor.                              Bankruptcy No. 06-00597S


DECISION RE: MOTION TO RETAIN
ECONOMIC STIMULUS REFUND CHECK

    Debtor Deborah Barbee asks to retain her economic stimulus refund check. Carol F. Dunbar, the standing trustee, objects. Hearing on the motion was held September 9, 2008 in Sioux City. Wil L. Forker appeared on behalf of Barbee. Dunbar appeared on her own behalf. This is a core proceeding under 28 U.S.C. § 157(b)(2)(L).

    Barbee filed her chapter 13 petition on June 9, 2006. She filed her proposed plan on the same date (doc. 2), and she filed a plan modification on August 2, 2006 (doc. 18). The proposed plan as modified was confirmed on September 27, 2006 (doc. 20).

    Barbee received a check from the United States in the amount of $600.00 pursuant to the Economic Stimulus Act of 2008, amending 26 U.S.C. § 6428. In her motion, she asks to retain the check to pay post-confirmation medical bills and to make a payment on a Menards account which she used to purchase a clothes washer. The trustee objects, contending that Barbee should pay these bills out of her monthly income.

Barbee is an above-median income debtor as provided in §§ 1325(b)(3) and (4).  The form B22C filed with her petition showed "Monthly Disposable Income Under § 1325(b)(2)" as $378.43 (doc. 1, p. 36, line 58).  She amended this form on August 2, 2006, and showed the monthly disposable income as $357.43 (doc. 17-1, p. 16, line 58).  At filing, Barbee's then disposable income, calculated by using schedules I and J, was $506.00 (doc. 1, p. 26, line 20c).

Barbee's confirmed plan provided that for the applicable 60-month plan period, she would pay $510.00 per month to the trustee from future earnings (doc. 2, ¶ 1a).  These proposed payments total $30,600.00.  The plan also promised to pay disposable income to the trustee.  I construe this promise to mean "income tax refunds."

The trustee's fee on this amount is $2,781.82.  Barbee's plan provides for payment of priority claims including the trustee's fee and any allowed attorney fees in excess of a $1,250.00 retainer.  The plan provides for direct payments by Barbee on her home mortgage note, and payments by the trustee to Bank of the West, which holds a security interest in Barbee's motor vehicle.  The payments on this note would be $292.12 monthly during the 60-month plan period, for a total of $17,527.20.  Bank of the West filed a proof of its claim (claim no. 5).

After deducting the trustee's fee and the car payments from Barbee's $30,600.00 in payments to the trustee, there would remain $10,290.98 for distribution to unsecured creditors. Barbee's amended form B22C computed monthly disposable income as $357.43 per month for the applicable 60-month period. This would require a distribution to unsecured creditors of $21,445.80 under the plan. Therefore, the plan did not meet the requirement of 11 U.S.C. § 1325(b)(1)(B). However, no one objected on this particular ground, and the plan was confirmed.

In the pending proceeding, it is not disputed between the debtor and the trustee that the stimulus tax rebate is in the nature of a tax refund and that it is disposable income under the plan. The 2008 stimulus rebate can constitute a refund for a debtor's 2007 taxes or an advance refund for 2008. In re Smith, ___ B.R. ___, 2008 WL 4000175 at * 2 (Bankr. S.D. Ind. 2008).

The dispute in this proceeding is whether Barbee should be able to retain the economic stimulus rebate to pay post-confirmation expenses which she says were unanticipated and in excess of her schedule J budget, or whether she must turn the refund over to the trustee for distribution under the plan. The trustee argues that Barbee's schedule J budget for monthly medical care is sufficient to pay her chiropractic expenses and that her home maintenance budget is sufficient to pay for the clothes washer, which would be paid for in installments on the

3

balance of the charge card.  Barbee argues that because other expenses, particularly those for gasoline and groceries, have gone up dramatically, meeting her budget is already difficult, and that use of the refund is needed to pay expenses.

Barbee's monthly budget for medical expenses is $150.00 and for home maintenance is $100.00 (doc. 1, p. 26, lines 3, 7). Barbee is making monthly payments to Menards for the $365.00 replacement washer, and she owes a balance of $241.00 for post-petition chiropractic care (doc. 35, attachments to motion).  The cost of chiropractic care has not yet been covered by her health insurance, because as of the date of the hearing, Barbee had not yet reached her annual policy deductible of $500.00.  The chiropractor is permitting her to make periodic payments on the bill.

Barbee testified that her home maintenance budget has been used for general maintenance, with no need for home repairs.  As to her medical expenses, her budget for the first eight months of 2008 totals $1,200.00, but as to actual expenses she has not yet exceeded her insurance deductible of $500.00.  It appears from the evidence that her monthly budget amounts for home maintenance and medical expenses are sufficient to absorb the cost of the $365.00 washing machine and the $241.00 in chiropractic bills. This is especially so because her visits to the chiropractor are now once per month at a cost of $36.00 per visit.  The monthly

4

minimum payment on the Menards card is $40.00. There are other charges on the card in addition to the washer. She has one year of no-interest payments on the washer if she pays the charge for it within a year of purchase which was July 2008.

As to Barbee's contention that other expenses have gone up dramatically, she says she is now spending $50.00 per week for gasoline (equivalent to $215.00 per month) and $90.00 per week for groceries (equivalent to $387.00 per month). At filing, her car operation budget was $173.33 per month and her monthly food budget was $346.00. She testified that her car insurance has decreased by $37.00 per month. Other than her own testimony, she offered no evidence of her actual expenses on these categories of expense.

The court finds that Barbee is able to make the periodic payments to the chiropractor and to Menards within the confines of her budget under the plan. Barbee obtained confirmation of a plan which is quite favorable to her. Section 1325(b)(1)(B) should have required her to pay $21,445.80 to unsecured creditors. The plan did not so provide, but it was confirmed without objection. The plan does provide for payments to the trustee of $30,600.00 plus disposable income (*i.e.*, tax refunds). But the plan requires the trustee's payment of $17,527.20 to the creditor holding the lien on Barbee's car. After payment of the trustee's fee and the car payments, there would remain only

$10,290.98 for payment to unsecured creditors.  Following confirmation, only $298.00 has been paid to the trustee as additional disposable income.  The court previously allowed Barbee to retain her 2006 tax refunds to do home repairs (doc. 31).

Notwithstanding the requirements of § 1325(b)(1)(B), the confirmed plan has in its essence permitted Barbee to retain the use of $292.12 of disposable income each month to pay the debt against her car.  She has failed to prove that she is unable to pay the monthly payments on the cost of the washer and the cost of medical care without further reducing the amount due to creditors holding allowed unsecured claims.

IT IS ORDERED that judgment be entered that the motion to retain the economic stimulus check is denied.

DATED AND ENTERED  September 18, 2008

William L. Edmonds, Bankruptcy Judge

6